KING GODDARD v. BLANCHE WILLIAMS.

(Filed 4 November, 1959.)

**1. Automobiles §§ 30, 46—**

Where there is testimony that the accident in suit occurred along a highway in a thickly populated area with residences and business establishments fronting thereon, at least some residences being side by side, the court is required to submit to the jury the question of whether the area was a residential district as defined by G.S. 20-38 (w)(1), and an instruction to the effect that there was no evidence that the area was a residential district and that the speed limit of 55 m.p.h. applied to automobiles traveling therein, must be *held* for error.

**2. Automobiles § 31—**

While G.S. 20-145 exempts a police officer from observing the speed limit set out in G.S. 20-141 when such officers is in the performance of his duties in apprehending a violator of the law or a person charged with or suspected of such violation, such police officer is nevertheless required to operate his vehicle with due regard to the safety of others, and must exercise that degree of care which a reasonably prudent man would exercise under like circumstances in the discharge of such duties.

**3. Same: Automobiles § 46— Instruction on exemption of police officer from speed restrictions held erroneous.**

An instruction to the effect that a police officer engaged in the discharge of his duties in an effort to apprehend a person charged with or suspected of violation of law, would not be liable to the fleeing person for injury resulting from a collision unless the conduct of the officer was wilful and wanton or the injuries were intentionally inflicted when they could have been avoided, must be *held* for prejudicial error, even though mere speed alone under such circumstances, unaccompanied by any recklessness or disregard of the rights of others, would not support an allegation of negligence on the part of the officer.

HIGGINS, J., not sitting.

APPEAL by plaintiff from *McLean, J.,* March-April Civil Term, 1959, of CLEVELAND.

The plaintiff instituted this action to recover damages for personal injuries and property damage allegedly growing out of a collision between plaintiff's Chevrolet automobile and the Chevrolet automobile of the defendant, which occurred about 9:30 p.m. on 19 April 1958.

Plaintiff alleged in his complaint that he was traveling west in his automobile on Grover Street, on the above date, in the City of Shelby, and was approaching a point on the street near Harmon's Grocery; that as he approached the driveway of Harmon's Grocery, he gave a left turn signal, indicating his intention to turn left into said driveway, and upon reaching the point where the driveway intersects with Grover Street he did in fact begin to make a left turn into the said driveway; that the defendant in his automobile approached the rear of plaintiff's automobile at a high and unlawful rate of speed and began passing the plaintiff's car without giving any signal whatsoever, and that as a result thereof a collision occurred when the right front of defendant's automobile rammed into the left side of plaintiff's automobile.

The plaintiff further alleged that the defendant operated his automobile at a speed greater than was reasonable and prudent, considering the fact that he was driving on a heavily traveled street in the City of Shelby in an area that was predominantly residential but which also contained business establishments, including Harmon's Grocery, all of which was known to the defendant; that the defendant operated his automobile upon said street at the time and place in question at a highly dangerous and unlawful rate of speed; that he was driving approximately 70 miles per hour in a 35-mile zone, contrary to the laws of the State of North Carolina and the ordinances of the City of Shelby, etc.

The defendant filed an answer and denied the plaintiff's allegations of negligence on his part and set up a cross-action alleging that, the collision was the result of the plaintiff's negligence; that he (the defendant) was a deputy sheriff of Cleveland County and was required to furnish his own automobile and at the time of the collision was pursuing the plaintiff who, he alleged, had failed to stop at a stop sign as he entered Highway No. 18 from the Ross Grove Church Road, north of Shelby; that Grover Street is a part of said highway; that with his siren blowing and red light burning, the defendant approached the plaintiff and undertook to pass him when the plaintiff, without warning and without giving any signal, suddenly turned his automobile into the path of the defendant's car, causing defendant's car to strike plaintiff's car broadside and as a result

of the collision the defendant's automobile was damages and destroyed and the defendant seriously injured.

Upon the evdience adduced in the trial below, the jury returned a verdict giving the defendant damages for personal injuries and property damage. From the judgment entered on the verdict, the plaintiff appeals, assigning error.

*C. C. Horn, J. A. West for plaintiff.*
*Falls, Falls & Hamrick for defendant.*

DENNY, J. The plaintiff bases his assignment of error No. 6 on exceptions Nos. 7 and 9, and assignment of error No. 10 on several exceptions, including No. 13, to those portions of the charge set out below. The court, after reading section 20-141 of General Statutes to the jury, charged the jury as follows: "Now, the court charges you that at the time and place in question that there is no evidence here that it was a residential district, and the court charges you that under the evidence in this case that the speed limit at the time and place in question for passenger cars — and it is admitted that both of these were — was 55 miles per hour." Exception No. 7.

The court then charged the jury; "Now, with reference to the defendant, if you shall find from this evidence and by its greater weight that he was in the performance of his duty, then the court charges you this spced limit has no application but it will be governed by Section 20-145, which reads as follows: 'The speed limits set forth in this article shall not apply to vehicles when operated with due regard to safety under the direction of the police in the chase or apprehension of violators of the law, or of persons charged with or suspected of any such violation. This exemption, however, shall not protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others.' "

The court, after giving further instruction on the last quoted statute, followed it with this instruction: "Now, the court further charges you that if you find from this evidence that he was not so operating his automobile at the time and place in question in the performance of his legal duties, then the court charges you that the speed limit of 55 miles would apply, and a violation of that speed limit would constitute negligence on the part of the defendant." Exception No. 9.

The evidence seems to support the view that it is some six or seven hundred feet or more from All-Day Barbecue on Grover Street to Harmon's Grocery, where the collision occurred. The defendant

testified: "That's a community there (speaking of the scene of the accident), thickly populated. There's houses there, right near the hospital, and there are several stores there. * * * It's a thickly populated area from the * * * All-Day Barbecue * * * to Harmon's Store, there's houses. Hudson Hosiery Mill * * * Carolina Dairy * * * Bridges Barbecue * * *. There's houses all along there and business establishments."

Officer J. W. Norman, who was riding with the defendant at the time of the collision, testified: "That was a residential zone. There's houses side by side on (sic) along from the All-Day (Barbecue) on down to that point (where the collision occurred). There are several businesses along there. In fact two or three where the collision occurred * * *. We were in a residential neighborhood, and there is a lot of business."

We think the evidence with respect to the character of the area in which the collision occurred is sufficient to require its submission to the jury and from which the jury might infer and find that the collision occurred in a residential district, as defined by the statute, G.S. 20-38 (w) (1), which reads as follows: "Residential District.— The territory contiguous to a highway not comprising a business district, where seventy-five per cent or more of the frontage thereon for a distance of three hundred (300) feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business purposes." Cf. Medlin v. Spurrier & Co., 239 N.C. 48, 79 S.E. 2d 209 and Hinson v. Dawson, 241 N.C. 714, 86 S.E. 2d 585.

If the jury should find from the evidence that the collision occurred in a residential district, then the plaintiff would be entitled to have the jury consider the conduct of the defendant in light of the character of the area in which he was driving, whether he was subject to the provisions of G.S. 20-141 or G.S. 20-145. The defendant testified that he was driving his car when he was within 25 feet of the point of the collision at a speed of 70 miles per hour. There was other evidence, however, to the effect that the defendant was driving 80 to 90 miles an hour at the time of the collision. The evidence was likewise conflicting as to the speed of the plaintiff's car at the time of the collision. The defendant testified that the plaintiff was traveling 70 miles per hour. The plaintiff testified he was traveling only 25 miles an hour, and offered other testimony to the effect that after giving a left turn signal, he started to make the left turn while traveling 15 to 20 miles per hour.

The portion of the charge challenged by exception No. 13 under assignment of error No. 10 is as follows: "Now, the defendant further says and contends that you should find that the defendant not

only was not violating any of the negligence allegations made by the plaintiff, but to the contrary, that upon this first issue that when you weigh and consider and compare it that you should find actually that the plaintiff was operating his automobile in order to guard and to hinder and to delay the police officers in the proper discharge of their duty. The court charges you if you should find such to be true from the evidence and by the greater weight, the burden being upon the defendant to so satisfy you, the court charges you that the defendant would not be liable upon any aspect of negligence unless you go further and find that regardless of the operation of the vehicle of the plaintiff — whether it was criminal at the time and in violation. of the law — that the conduct of the officer was wilful, and wanton, that is, that it was intentional, purposeful, and made for the purpose of injuring the plaintiff in his person or property when it could have been avoided."

In 47 Am. Jur., Sheriffs, Police, and Constables, section 42, page 851, it is said: "A peace officer is generally held to be personally liable for negligence or wrongful acts causing personal injury or death. He has no right needlessly or wantonly to injure in any respect persons whom he is called on to arrest or detain, and for the infliction of any such injury he is liable to the injured person, in the same manner and to the same extent as private individuals would be. * * *"

Likewise, in 60 C.J.S., Motor Vehicles, section 375, page 929, it is also said: "The fact that a police vehicle is exempt from the operation of traffic regulations or enjoys certain prior rights over other vehicles does not permit the operator of such vehicle to drive in reckless disregard of the safety of others; nor does it relieve him from the general duty of exercising due care."

In the case of *Glosson v. Trollinger*, 227 N.C. 84, 40 S.E. 2d 606, the plaintiff a deputy sheriff, instituted the action to recover for injuries sustained in a collision between his automobile and a truck. The evidence tended to show that the deputy sheriff, after the truck passed him on the highway, followed the truck on wet, slippery pavement, in a residential district in the City of Burlington, at a speed in excess of 40 miles per hour; that as the plaintiff started to pass the truck for the purpose of stopping it and warning or arresting the driver for speeding, there was another car approaching from the opposite direction so he dropped back behind the truck and then hit the back of the truck when the truck was suddenly stopped without warning or signal of any kind. The evidence disclosed that a car stopped immediately in front of the truck. causing the truck driver to stop suddenly and without having time to give any signal. Issues of

negligence and contributory negligence were submitted, both of which were answered in the affirmative. The plaintiff appealed, contending that under G.S. 20-145 it was error to sumit the issue of contributory negligence. This Court held the issue was properly submitted and that there was no error in the charge. An examination of the charge reveals that the plaintiff officer was given full benefit of the provisions of G.S. 20-145 and that the plea of contributory negligence was based on allegations to the effect that the plaintiff, at the time of the collision, was operating his car "at a high and unlawful rate of speed and in reckless disregard of the safety of others."

G.S. 20-145 exempts a police officer from observing the speed limit set out in G.S. 20-141 when such officer is operating an automobile "in the chase or apprehension of a violator of the law or persons charged with or suspected of any such violation." Even so, the speed law exemption is effective only when the officer operates his car "with due regard to safety" and does not protect him "from the consequences of a reckless disregard of the safety of others."

There is no exemption granted by G.S. 20-145 from reckless and negligent conduct by an officer unless such reckless and negligent conduct is wilful and wanton, intentional and purposeful, and made for the purpose of injuring the person the officer was seeking to arrest. In such situation, an officer is liable for his negligent acts as well as for his wilful and wanton acts. However, if the jury should find that the defendant was engaged in his official duties at the time of the collision and that the plaintiff was engaged in an effort to evade arrest, knowing that the defendant was chasing him, mere speed alone, unaccompanied by any recklessness or disregard of the rights of others, would be insufficient to support an allegation of negligence on the part of the defendant. *La Marra v. Adam,* 164 Pa. Super. 268, 63 A 2d 497; *American Motorists Ins. Co. v. Rush,* 88 N.H. 383, 190 A 432; *McKay v. Hargis,* 351 Mich. 409, 88 N.W. 2d 456; *Goldstein v. Rogers* (Cal. App.), 208 P 2d 719; *Cavey v. City of Bethlehem,* 331 Pa. 556, 1 A 2d 653.

In *McKay v. Hargis, supra,* the plaintiff, an officer, brought an action to recover for injuries sustained when his car went out of control and struck a tree while he was chasing a traffic violator. The Court cited *Edberg v. Johnson,* 149 Minn. 395, 184 N.W. 12, and quoted from the opinion in that case as follows: "We do not hold that an officer, when in pursuit of a lawbreaker, is under no obligation to exercise a reasonable degree of care to avoid injury to others who may be on the public roads and streets. What we do hold is that, when so engaged, he is not to be deemed negligent merely because he

fails to observe the requirements of the Motor Vehicles Act. His conduct is to be examined and tested by another standard. He is required to observe the care which a reasonably prudent man would exercise in the discharge of official duties of a like nature under like circumstances." The Michigan Court then said: "We know of no better standard by which to determine a claim of negligence on the part of a police officer than by comparing his conduct * * * to the care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances."

In our opinion, the plaintiff is entitled to a new trial and it is so ordered.

New trial.

HIGGINS, J., not sitting.