TILDA E. BULLINS, ADMINISTRATRIX OF THE ESTATE OF MAXIE LEE BULLINS, DECEASED v. C. R. SCHMIDT, R. J. BLAKELY, JR., AND THE CITY OF GREENSBORO, NORTH CAROLINA

No. 50PA88

(Filed 30 June 1988)

**Negligence § 29.1; Sheriffs and Constables § 4— high speed chase—collision not involving officer's vehicle—liability of officer**

The trial court erred by not granting defendants' motion for a directed verdict in a negligence action by the estate of a driver killed during a collision with a vehicle being pursued by Greensboro Police Department officers at high speed. The policy of the State is that liability cannot attach where the officer's vehicle does not collide with another person, vehicle or object while in a chase unless the officer's conduct constituted gross or wanton negligence. There is no evidence that officers in this case violated any rules of the road; officers were not negligent in pursuing and continuing to pursue the car; the pursuit was in the early morning hours along a predominantly rural section of highway where traffic was light and the road was dry; and officers continuously used their emergency lights and sirens, kept their vehicles under proper control, and did not collide with any person, vehicle or object.

ON discretionary review prior to determination by the North Carolina Court of Appeals of defendants' appeal from the judgment entered by *Long,* J., at the 1 June 1987 session of Superior Court, GUILFORD County. Heard in the Supreme Court 9 May 1988.

*Donaldson, Horsley & Greene, P.A., by William F. Horsley, and Folger & Tucker, by Ben F. Tucker, for plaintiff-appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Charles E. Nichols, Joseph R. Beatty, and Fred T. Hamlet, for defendant-appellants.*

*Beskind and Rudolf, P.A., by Donald H. Beskind, for the North Carolina Academy of Trial Lawyers, amicus curiae.*

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Linda Anne Morris, Associate Attorney General, for the State of North Carolina, amicus curiae.*

MARTIN, Justice.

We hold that the trial judge erred in failing to grant defendants' motion for directed verdict at the close of all the evidence; therefore, we reverse the judgment of the superior court.

This lawsuit arose out of a high-speed chase by Greensboro police officers of an automobile being operated by Luther McMillian. The McMillian car eventually collided with an automobile being operated by Maxie Lee Bullins. Both drivers were killed in the collision.

At about 1:03 a.m., 20 January 1985, Officer Blakely of the Greensboro Police Department observed an automobile with a Florida license plate occupying two lanes of traffic on U.S. 220 in the city of Greensboro. The car was being driven by McMillian and the officer observed it weaving from left to right between the two lanes. Officer Blakely attempted to stop the automobile, and when it did not stop in response to the blue light and siren, the officer began to follow the vehicle, which was traveling at a low rate of speed at that time. Blakely radioed his observations to the Greensboro Police Department. Police Sergeant Schmidt approached the area in a motor vehicle and put his car in front of the McMillian car in an attempt to make a moving roadblock and thereby stop the McMillian vehicle. However, McMillian evaded the roadblock by driving around Schmidt's patrol car and continuing north on U.S. 220 at an accelerated rate of speed. This pursuit lasted for some fourteen minutes and covered a distance of about eighteen miles, extending into the adjoining county of Rockingham. During this entire time the Greensboro police officers were in continuous radio contact with various police, sheriff, and Highway Patrol departments.

Lieutenant Stewart, who was in charge of all patrol officers on duty in Greensboro at the time, authorized Sergeant Schmidt

and Officer Blakely by radio transmission to continue the pursuit in their discretion. The pursuit was continued at various speeds up to 100 m.p.h. Several cars going south on U.S. 220 had to pull off the side of the road in order to avoid a collision. At times the McMillian car had its headlights off. While in a no-passing zone, McMillian pulled into the southbound lane to pass a northbound car in front of him and collided head-on with the Bullins automobile, killing both drivers. At this location, U.S. 220 was a two-lane highway. At the time of the impact, the McMillian vehicle apparently had on only its parking lights. Neither police car was struck in the collision. The Schmidt police car was some 100 to 125 yards behind McMillian's car, with Blakely following Schmidt. The police officers had reduced their speed and increased the distance between their vehicles and the McMillian vehicle upon seeing the northbound vehicles in front of McMillian.

The trial judge denied defendants' motion for directed verdict at the close of all the evidence. We find this to be error. The General Assembly has established the public policy of North Carolina with respect to the operation of police vehicles in the chase or apprehension of violators of the law in N.C.G.S. § 20-145 (Supp. 1987):

> The speed limitations set forth in this Article shall not apply to vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation . . . . *This exemption shall not, however, protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.*

(Emphasis added.)

This Court has established the standard of care where the conduct of an officer in the chase or apprehension of a law violator results in the *officer's* vehicle colliding with another person, vehicle, or object. The officer is held to the standard of care that a reasonably prudent person would exercise in the discharge of official duties of a like nature under like circumstances. If the officer complies with this standard under these circumstances, he is exempt from the statutory speed laws. *Goddard v. Williams*, 251 N.C. 128, 110 S.E. 2d 820 (1959); *Glosson v. Trollinger*, 227 N.C. 84,

40 S.E. 2d 606 (1946); *Collins v. Christenberry*, 6 N.C. App. 504, 170 S.E. 2d 515 (1969).

This Court faces for the first time the determination of the proper standard of care where the injuries complained of do *not* result from the officer's vehicle colliding with another person, vehicle, or object in the chase or apprehension of a law violator. Under these circumstances, we conclude that the applicable standard is whether the officer's conduct constitutes gross negligence. The last sentence of the above-quoted statute establishes as the public policy of North Carolina that if an officer's conduct under the facts of this case is determined to be grossly negligent, then the statute does not protect him and he may be liable for damages proximately resulting from such gross negligence.

Gross negligence is wanton conduct done with conscious or reckless disregard for the rights and safety of others. *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956); *Wagoner v. R.R.*, 238 N.C. 162, 77 S.E. 2d 701 (1953); *Jarvis v. Sanders*, 34 N.C. App. 283, 237 S.E. 2d 865 (1977). We hold that this standard is imposed by N.C.G.S. § 20-145 in determining the public policy of the state. *See generally* Note, *Torts—Speed Exemption Statute—Standard of Care in Operation of Police Vehicles—Liability of City, County, or State for Negligence of Police Officers*, 39 N.C.L. Rev. 460 (1961). Officers are required at times to chase and apprehend law violators. Where the officer's vehicle does not collide with another person, vehicle, or object under these conditions, the policy of the state is that liability cannot attach unless the officer's conduct constitutes gross or wanton negligence.

We recognize that other jurisdictions are divided in the various standards of care applied under these conditions. *See* Annotation, *Government Liability—Police Chase*, 4 A.L.R. 4th 865 (1981). However, in view of the language of our statute that upon a showing of the reckless disregard of the safety of others the officer loses the benefit of the statute, we conclude that standard to be appropriate under these circumstances.

We turn now to the task of determining whether plaintiff's evidence was sufficient to survive defendants' motion for directed verdict. The test is whether plaintiff's evidence, viewed in the light most favorable to plaintiff and giving her every reasonable inference therefrom, is sufficient to support a verdict in plaintiff's

favor. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Plaintiff alleged that defendants' conduct was grossly or wantonly negligent and in reckless disregard of the rights and safety of others in that the officers operated their vehicles carelessly and recklessly, at excessive speeds, without keeping a proper lookout, by engaging in a high-speed pursuit of a suspected misdemeanant, and without proper training in a high-speed pursuit.

Plaintiff's evidence fails to support her allegations. The trial judge determined in the charge conference that the only contentions of negligence to be submitted to the jury were (1) whether the officers failed to use reasonable care in pursuing and continuing to pursue the McMillian car in a high-speed nighttime chase over a long distance while the driver of the McMillian vehicle was engaged in careless and reckless driving, and (2) whether Lieutenant Stewart failed to use reasonable care when he authorized the chase of the vehicle to continue. The trial judge so instructed the jury. He also charged that the officers would not be liable merely because they failed to observe the motor vehicle laws, and applied the standard enunciated by this Court in *Goddard*, 251 N.C. 128, 110 S.E. 2d 820, to the above contentions of negligence.

There is no evidence in this case that the officers violated any of the rules of the road. Further, the officers were not negligent in pursuing and continuing to pursue the McMillian car. Public policy requires officers in North Carolina to pursue and attempt to apprehend violators of the law. Under the facts of this case, officers will be held liable only if they are grossly or wantonly negligent in deciding to pursue or continue to pursue the law violator. Here, there is no showing that the officers were negligent under the standard applied by the trial judge, much less grossly negligent. The pursued vehicle had out-of-state tags. The driver was unknown to the officers and was acting as if he was under the influence of alcohol. With approximately fifty thousand persons killed on the nation's public highways each year (1640 in North Carolina), drunken drivers are a deadly menace to innocent persons. Officers have a duty to remove them from the highways. *DeWald v. State*, 719 P. 2d 643 (Wyo. 1986). The pursuit was in the early morning hours along a predominantly rural section of U.S. 220 where traffic was light and the road was dry. The officers continuously used their emergency lights and sirens, kept

their vehicles under proper control, and did not collide with any person, vehicle, or object.

*Roberson v. Griffeth,* 57 N.C. App. 227, 291 S.E. 2d 347, *disc. rev. denied,* 306 N.C. 558, 294 S.E. 2d 224 (1982) (pursued car collided with plaintiff's intestate), relied upon by plaintiff, is no longer authoritative in view of the standard of gross negligence this Court adopts today.

The denial of defendants' motion for directed verdict is reversed and the cause is remanded to the Superior Court, Guilford County, for the entry of an order directing a verdict for defendants and dismissing the action.

Reversed and remanded.